UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| GLEN MURRAY, | ) | |
| a/k/a Glen Murry, | ) | |
| | ) | Civil No. 6:20-cv-00082-GFVT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| DONNIE JONES, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

In October 2018, Kentucky State Police troopers Donnie Jones and Jeremy Elliotte had to use force to subdue plaintiff Glen Murray while trying to place him under arrest. Seven days later, Murray was flown to a hospital to receive emergency medical treatment for extremely serious injuries he sustained in an assault. Murray claims that, notwithstanding the week-long gap between his arrest and hospitalization, the troopers caused those injuries during his arrest. Murray sues the officers for using excessive force and their supervisor, Sergeant Les Moses, for failing to prevent it.

The officers leave the question of causation aside, instead asserting that Murray waited longer than the statute of limitations allows to file suit, and that in any event his guilty plea to resisting arrest bars his claims. Murray counters by arguing that a salmagundi of circumstances entitled him to more time to file suit: he first had to receive medical treatment at the hospital, then recover at home, then look (unsuccessfully) for an attorney, then learn the names of the arresting officers, and then overcome obstacles to filing suit *pro se* while he was in prison. He

also admits that he resisted arrest, but contends that his conviction is not at odds with his assertion that the officers used excessive force.

Murray is clearly wrong on the first point, which appears to make his claims time-barred. But it isn't clear if he is right on the second point, which might render his claims premature. Because a conclusive determination on the matter is not possible on the present record, the Court directs further proceedings in the case. But whichever way that cookie eventually crumbles, it does crumble, and this case must be dismissed.

**I**

Murray does not remember anything that happened that day. So in his complaint he describes the operative events of October 29, 2018, by referring to the police citation created by trooper Jones and issued on the day of his arrest:

> Received a complaint of a suspicious male on Dal rd. When I made contact with the above he started to give me a social and fled on foot down the railroad tracks. The above continued down the railroad tracks. I got back in my car and continued on down and got back on the railroad tracks ahead of the above. I made contact with the above about a half mile down. When I approached the male he started to run again and when I grabbed ahold of him he clinched his fist and swung at me. I used closed fist hand strikes to get the male to the ground. After on the ground the male continued to kick at me and try to get back up on his feet. The male continued this until trooper Elliote and Sarg. Moses arrived to help me place the above in handcuffs.

[R. 18 at 2-3; R. 34-6] After he was taken into custody Murray was charged in Williamsburg, Kentucky with resisting arrest, third degree assault, fleeing or evading police, and menacing.[1]

---

[1]In his complaint Murray originally said these events happened on November 5, 2018. [R. 18 at 2-3] But his response says that he was arrested on October 29, 2018. [R. 34 at 1] That is the date the police citation states that he was arrested and the date that he was criminally charged in the District Court of Whitley County, Kentucky. *See* https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=118&court=1&division=DI&caseNumber=18-F-00330&caseTypeCode=FE&client_id=0 (visited on March 8, 2022). The Court assumes that the October date is the correct one, but it doesn't make any difference to the issues resolved today.

A week later on November 5, 2018, Murray was flown to the University of Tennessee Medical Center in Knoxville, Tennessee with severe injuries. Murray arrived at the hospital unresponsive and intubated. Members of the trauma team told doctors at the hospital that Murray "was combative and was assaulted by officers." Murray was assessed with more than a dozen fractures to his face, shoulder, arm, ribs, and spine. He also had lacerations to the liver, internal bleeding in the brain, and acute blood loss. Doctors induced a coma where Murray remained for some time, receiving treatment at the hospital for a total of 21 days. He was released from the hospital on November 26, 2018. [R. 18 at 3-4; R. 34-3 through 34-5]

Murray states in an affidavit that he spent the next few months recuperating at home. During this time he called several attorneys in an attempt to sue regarding the assault, but none would take his case because they didn't want to sue KSP officers. Murray asserts that he did not know the names of the officers who arrested him, [R. 34-6 at 1], but he does not explain how he nonetheless knew at this time that they worked for the state police.

On February 7, 2019, Murray was arrested on drug charges in Indiana. On April 24, 2019, he pled guilty to those charges and was sentenced to two years imprisonment. Murray states that while in the state prison in Indiana he did not have the right forms to file a complaint in Kentucky. In December 2019, prison officials asked Murray to sign forms relating to the Kentucky charges in Whitley County. In January 2020 he was provided with a copy of the police citation that identified Jones, Elliotte, and Moses as the officers involved. Murray then tried several times to file a complaint in this Court, but each attempt was unsuccessful because he did not have the correct address. *Id*. at 2.

Murray did successfully file his complaint *pro se* on April 2, 2020.[2]  In his amended complaint filed with the assistance of counsel, he claims that the officers used excessive force in violation of the Fourth and Fourteenth Amendments.  He also asserts Kentucky common law claims for battery, negligence, and gross negligence, as well as a negligence *per se* claim arising out of abuse of public office pursuant to Ky. Rev. Stat. 522.010 *et seq.* and Ky. Rev. Stat. 446.070.  [R. 18 at 4-5]

## II

## A

The officers first contend that the Court erred earlier in the case when it afforded Murray more than the 90 days permitted by Rule 4(m) to serve the complaint.  *See* [R. 21]  They therefore seek dismissal of the complaint for failure to prosecute.  [R. 30 at 5-7]  Specifically, they point to decisions which hold that counsel's mere oversight in failing to serve the defendants is not a sufficient ground to permit additional time for service of process.  *Cf. DeLong v. Arms*, 251 F.R.D. 253, 255 (E.D. Ky. 2008), *aff'd*, 369 F. App'x 654 (6th Cir. 2010).  But many of the cited cases involved delays far more extensive and less understandable than were presented here.  In any event, the text of Rule 4(m) makes additional time to serve process mandatory if the plaintiff can show good cause for the failure to timely effect service.  And even if he cannot, the Court still has discretion to extend the deadline for service.  *Stapleton v. Vicente*, No. 5:18-CV-504-JMH-MAS, 2021 WL 1234636, at *2 (E.D. Ky. Mar. 31, 2021).

The Court previously found "adequate cause to excuse the oversight."  [R. 21 at 1]  Rule 4(m) requires "good cause," which the Sixth Circuit says means "at least excusable neglect."

---

[2]     Murray was incarcerated when he mailed his complaint, [R. 1 at 1, 6], so it is deemed filed on the day he signed it.  *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

*Turner v. City of Taylor*, 412 F. 3d 629, 650 (6th Cir. 2005). The Court looks at the circumstances surrounding the omission to determine whether that equitable standard is met. These may include whether the party acted in good faith; the reason for the omission, including whether it was within the reasonable control of the party; the length of delay and its impact on judicial proceedings; and any prejudice to other parties. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Sixth Circuit has stated that "[t]he excusable neglect standard has consistently been held to be strict, and can be met only in extraordinary cases." *Turner*, 412 F.3d at 650. That said, the Supreme Court has clearly held that ordinary negligence can constitute "excusable neglect." *See Pioneer*, 507 U.S. at 394-95 ("...at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. ... reading [excusable neglect] inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts.").

Here, the record indicates that counsel's acknowledged oversight was unintentional and brief. The defendants point to no prejudice and the record reveals none. The Court therefore adheres to its prior conclusion that Murray's failure to timely effect service of process amounted to no more than excusable neglect. Even if it did not meet that standard, the Court was authorized to extend Murray's time to serve the complaint. Such an extension may be warranted where (as appeared at the time might the case here) a without-prejudice dismissal under Rule 4(m) could or would effectively bar the plaintiff's claims with prejudice because the statute of limitations had run out during the pendency of the case. *See Harper v. City of New York*, 424 F. App'x 36, 39 (2d Cir. 2011); *Boley v. Kaymark*, 123 F. 3d 756, 758-59 (3d Cir. 1997). This is

especially so in the absence of meaningful delay caused by the extension or demonstrable prejudice to the defendants.  The Court therefore declines to revisit the extension of time previously granted to Murray to serve the complaint.

<strong>B</strong>

The officers next contend that all of Murray's claims are barred by the statute of limitations.  To evaluate that assertion, the Court must start by determining when each of his claims accrued.  Federal principles govern when a claim under Section 1983 accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  A Section 1983 claim accrues on the date when the plaintiff should have discovered the injury which forms the basis for his claims through the exercise of reasonable diligence.  *Johnson v. Memphis Light Gas & Water Div.*, 777 F. 3d 838, 843 (6th Cir. 2015).  Ordinarily, a claim under the Fourth Amendment that excessive force was used during an arrest accrues at the time of arrest.  *Fox v. DeSoto*, 489 F. 3d 227, 233 (6th Cir. 2007).  This rule applies in the typical circumstance where the arrestee is fully and immediately aware that he is being arrested.  *Cf. Lamb v. Smith*, No. 1:18-CV-00095-GNS, 2019 WL 177939, at *2 (W.D. Ky. Jan. 11, 2019).  Here Murray states that he has no recollection of his arrest at all.  And approximately one week later, he was placed in a medical coma for nearly three weeks.  Therefore Murray's excessive force claim appears to have accrued at the earliest on the date of his arrest on October 29, 2018, or giving him the benefit of every conceivable doubt, no later than the day he was released from the hospital on November 26, 2018.

Kentucky law governs the accrual of Murray's pendent state law claims for negligence, gross negligence, battery, and abuse of public office.  Kentucky law provides that a cause of action generally accrues when the injury occurs.  *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972).  Unlike the Section 1983 claim, accrual of these state claims is not deferred by any delay

6

in the plaintiff's discovery of his injury because no Kentucky statute authorizes such a deferral. *Middleton v. Sampey*, 522 S.W.3d 875, 879 (Ky. Ct. App. 2017). These claims therefore appear to have accrued on October 29, 2018.

All of Murray's claims, state and federal alike, are governed by a one-year limitations period. Section 1983 does not provide its own limitations period, so federal courts borrow the most analogous statute of limitations from the state where the events occurred. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012). In Kentucky, that is Ky. Rev. Stat. § 413.140(1)(a), which establishes a one-year limitations period for personal injuries. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009). That same one-year period applies to Murray's claims for negligence and gross negligence, *Phillips v. Lexington–Fayette Urban Cnty. Govt.*, 331 S.W.3d 629, 634 (Ky. App. 2010), and to his negligence *per se* claim, *Toche v. American Watercraft*, 176 S.W.3d 694, 695 (Ky. App. 2005); *Anderson v. Speedway Superamerica, LLC*, No. 05-57-DLB, 2007 WL 710164, at *2 n.4 (E.D. Ky. Mar. 6, 2007) (same). Therefore, absent tolling, Murray was required to commence suit upon his state claims by October 29, 2019, and upon his federal claims by no later than November 26, 2019.

Murray filed his complaint long after those dates had passed, on April 2, 2020. Murray attempts to bridge that roughly four-month gap by relying upon equitable tolling. But before addressing that question, the Court briefly addresses a matter that the parties do not. Both sides assume that the limitations period stopped running upon the filing of the complaint. With respect to Murray's claim under Section 1983, that's correct. A claim reliant upon this Court's federal question jurisdiction is "commenced" when the plaintiff files his complaint, Fed. R. Civ. P. 3, so long as the filing fee is either paid or the Court later grants *pauper* status, 28 U.S.C. § 1914. *See Jones v. Hinton*, 847 F. Supp. 41, 43 (E.D. Pa. 1994); *Krajci v. Provident Consumer Disc. Co.*,

7

525 F. Supp. 145, 149 (E.D. Pa. 1981) ("Although a complaint tendered *in forma pauperis* cannot technically be 'filed' until leave to proceed *in forma pauperis* has been granted, the limitations period is tolled by the lodging of the complaint.").  Murray therefore commenced this action with respect to his Section 1983 claim on April 2, 2020.

For state law claims pursued in federal court pursuant to its diversity jurisdiction, the Court applies Kentucky law to determine when those claims commenced.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 405-07 (2010); *Powell v. Jacor Commns. Corp.*, 320 F.3d 599, 602 (6th Cir. 2003).  The same goes for state law claims piggybacking upon a federal claim through the Court's supplemental jurisdiction.  *Bradford v. Bracken Cty.*, 767 F. Supp. 2d 740, 745-46 (E.D. Ky. 2011) ("... whether a state law claim is in federal court on diversity or supplemental jurisdiction, state law determines when the claim commenced because it is the source of the right sued upon, and not the ground on which federal jurisdiction is founded, which determines the governing law.").

Kentucky law provides that an action is commenced "on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." Ky. Rev. Stat. § 413.250.  Thus "the statute of limitations runs until a summons is actually issued." *Steadman v. Gentry*, 314 S.W.3d 760, 762 (Ky. App. 2010).  That did not happen in this case until March 16, 2021, more than two years after the events giving rise to Murray's claim.  [R. 22, 23]

Of course, the Clerk cannot issue summons to a *pro se* prisoner plaintiff until the filing fee is resolved and the Court has conducted the required screening of the complaint.  *Jackson v. Herrington*, 393 F. App'x 348, 353 (6th Cir. 2010)  ("district courts cannot issue summonses in *in forma pauperis* prisoner cases until after screening the complaint for frivolousness and other

8

defects under 28 U.S.C. §§ 1915(e) and 1915A(b).").  And in this case that screening caused the Court to order this matter stayed pursuant to *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).  [R. 13]  The limitations period was therefore tolled during this period - from April 2, 2020 to November 25, 2020 - because Murray was unable to obtain summons.

But that tolling ceased when the Court re-opened the case on November 25, 2020.  [R. 17]  The subsequent delay in service of summons therefore caused the limitations period to run on Murray's state claims from November 26, 2020 to March 16, 2021, a period of nearly four months.  Adding the resulting 110-day period to the April 2, 2020, filing date results in an effective commencement date of July 21, 2020 for Murray's state law claims.  Thus, absent tolling, Murray's Section 1983 claims were filed more than four months after expiration of the limitations period, and his state law claims were filed nearly nine months too late.

Murray's plea for equitable tolling fails to establish plausible grounds to extend his filing deadline by more than a month or so.  Kentucky's tolling rules apply to Murray's state law and Section 1983 claims alike.  *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003); *Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules.") (cleaned up).  In Kentucky, a plaintiff seeking the benefit of equitable tolling must show that he pursued his rights diligently, but that some extraordinary circumstance outside of his control prevented him from timely filing suit.  *Williams v. Hawkins*, 594 S.W.3d 189, 193-94 (Ky. 2020).  The federal rule is to the same effect.  *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (holding that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.") (cleaned up).

The facts, viewed favorably to Murray, indicate that he was in no position to pursue a claim against the officers starting from the time of his arrest and the alleged assault (which he does not even remember) and throughout his stay in the hospital (during which he was, for the most part, in a coma). *Cf. Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) (granting equitable tolling to homeless immigrant who was so severely beaten by a jail guard that he went into a coma). The Court concludes therefore that Murray is entitled to equitable tolling for a period of 29 days, commencing on October 29, 2018 and concluding on November 26, 2018.

But following his release from hospital on November 26, 2018, Murray spent the next ten weeks at home recuperating. Murray states that "[d]uring that time, I contacted many attorneys to represent me, but no one would take my case because it involved the Kentucky State Police. I still did not know the identities of the State Troopers who were involved in my assault." [R. 34-6 (Decl. of Glen Murray) at 1] These facts undermine Murray's request for tolling in several respects. First, Murray's efforts to obtain legal representation regarding his claims establish that he was aware that he might have a claim, that he knew of his injuries, and that he believed that they had been caused by state troopers.

Second, while Murray states that he did not actually know the names of the KSP officers involved in his arrest, he points to nothing that *prevented* him from learning their names. It is true that equitable tolling may apply when a plaintiff, "despite all due diligence ... is *unable* to obtain vital information bearing on the existence of his claim." *Williams*, 594 S.W.3d at 193 (emphasis added) (*citing Chung v. U.S. Dept. of Justice,* 333 F.3d 273, 278 (D.C. Cir. 2003)). But Murray points to no such impediment. He does not indicate that he attempted to obtain a copy of the police citation or the indictment from the Whitley District Court and was denied.

10

And he does not state that he contacted the Kentucky State Police in an effort to learn the names of the officers but was refused. Equitable tolling is appropriate where an external force, one wholly outside of the plaintiff's control, prevents him from filing suit. Without such a barrier, the usual rule applies: "[t]he statute of limitations is not tolled while a plaintiff attempts to identify the correct defendants." *Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001). Diligence does not require a herculean effort to file suit in the face of insurmountable odds. But it does require far more than the mere hope that any difficulties encountered in filing a complaint will dissipate without effort by the plaintiff or will be resolved by others on his behalf.

Murray next seeks tolling for the period from February 2019 through January 2020, which he spent in Indiana custody on drug charges. During this time Murray states only that he did not have any unidentified "materials" to file a complaint while in prison. [R. 34-6 at 2] By "materials," he appears to refer to the means to identify the defendants' names. But as before, Murray does not indicate that he made any effort to identify the defendants or what, if anything, prevented him from doing so. Murray does not allege that he was unable to communicate, by telephone or by mail, with the Kentucky court to learn the particulars of his arrest and the charges against him, or to ask family members or his public defender to do so on his behalf. In addition, an officer at the Indiana prison was able to obtain the police citation just one month after Murray asked for it. Presumably the officer was not possessed of any particular knowledge of Kentucky's courts or how to access their dockets. Murray has again failed to provide facts which indicate that he acted diligently to file suit but was prevented from doing so. *Cf. Portman v. Wilson*, No. 10-CV-169-KSF, 2010 WL 4962922 at *2 (E.D. Ky., Dec. 1, 2010) ("It is well settled that the lack of legal assistance, ignorance of the law or the frustrations of typical prison conditions that make prison-based litigation difficult, such as transfers, lack of access to copies

and legal materials, do not constitute exceptional  circumstances justifying equitable tolling.")
(collecting cases).[3]

Finally, Murray states that he made several attempts to file his complaint from January
through March 2020, but did not succeed because he did not have the correct mailing address for
the Court.  [R. 34-6 at 2]  But he again fails to adequately explain how his failure constitutes an
extraordinary circumstance that was "outside of his control."  The Court's mailing address is
readily available online at its website and upon request, by telephone or mail, from the Clerk's
Office.  Murray's own failure to obtain the proper mailing address for nearly three months does
not establish grounds for equitable tolling.  *Cf. Perea v. Soelle*, 375 F. App'x 800, 801 (9th Cir.
2010) (defendant not entitled to equitable tolling where he mailed petition to outdated mailing
address for courthouse, causing untimely filing); *Winfrey v. Stephens*, No. H-15-1936, 2015 WL
7738076, at *4 (S.D. Tex. Nov. 30, 2015) ("Had petitioner requested equitable tolling based on
his use of an incorrect mailing address, the Court would not have granted relief."); *Torres v.
Vasquez*, No. CV 16-08704-AB (JDE), 2017 WL 3841762, at *6 (C.D. Cal. Apr. 19, 2017)
(same).

All things considered, Murray is entitled to approximately one month of equitable tolling.
This falls far short of bridging the gap – four months for his Section 1983 claim and nine months

---

[3]      Murray also claims that he "could not file this action without knowing against whom to
bring the instant claims."  [R. 34 at 5]  That's not entirely true: a plaintiff may name a "John Doe"
defendant in his complaint as a way to refer to a person whom the plaintiff alleges has committed
an actionable wrong against him where the identity of the person is not yet known to the plaintiff.
Still, the plaintiff must identify and substitute a properly-named defendant within the limitations
period, as an amended complaint with the defendant's proper name will not relate back to the filing
of the original. *Cf. Brown v. Cuyahoga County*, 517 F. App'x 431, 435 (6th Cir. 2013); *Smith v.
City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012).

for his state law claims – needed to make them timely filed.  All of his claims therefore appear barred by the statute of limitations.

## C

The officers separately assert that pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), Murray's excessive force claim is precluded by his conviction for resisting arrest.[4]  [R. 30 at 8-10]  When a civil rights claim is asserted against an arresting officer, the court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  If it would, the civil rights claim is barred unless and until the conviction is reversed or otherwise invalidated.  *Heck*, 512 U.S. at 487.

But first, an antecedent question:  if Murray's excessive force claim is barred by the statute of limitations, does this not obviate the need to consider *Heck* as an alternative ground for dismissal?  The officers indicate as much.  [R. 30 at 12 ("Each of these faults – the statute of limitations, the failure to timely serve the Defendants, and Plaintiff's conviction for resisting arrest – independently requires dismissal of this action.")]

But this perspective misapprehends *Heck*.  A statute of limitations defense contends that the plaintiff filed suit late, too long after his claim accrued.  Conversely, a defense under *Heck* argues that the plaintiff filed suit too early because his conviction, if undisturbed, presents an

---

[4]      *Heck* applies only to civil rights claims, so it does not apply to Murray's battery and negligence claims arising under Kentucky law.  *Cf. Fox v. DeSoto*, 489 F. 3d 227, 235 (6th Cir. 2007); *Lamar v. Beymer*, No. 5:02-CV-289R, 2005 WL 2464178, at *12 (W.D. Ky. Oct. 4, 2005) ("Though *Heck* precludes an excessive force claim in this instance under § 1983, the *Heck* preclusion does not apply to the state law claim ...").  Of course, a criminal conviction can have *res judicata* effects upon related but later-asserted civil claims, but the officers do not press any such argument here.

insuperable impediment to suit.  When presented contemporaneously, the defenses are mutually

exclusive.  As the Tenth Circuit aptly explained:

> Thus, for § 1983 claims necessarily challenging the validity of a conviction or sentence, *Heck* delays the rise of the cause of action until the conviction or sentence has been invalidated.  Because the cause of action does not accrue until such time, the applicable statute of limitations does not begin to run until the same time."); *Heck*, 512 U.S. at 489-90 ("Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. ... a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.").

*Beck v. City of Muskogee Police Dep't*, 195 F. 3d 553, 557 (10th Cir. 1999).  *See also*

*D'Ambrosio v. Marino*, 747 F. 3d 378, 384 (6th Cir. 2014) ("*Heck* modified the general rule of

accrual for § 1983 actions by delaying what would otherwise be the accrual date of a tort action

until the setting aside of an *extant conviction* which success in that tort action would

impugn.  Under *Heck,* a cause of action under § 1983 that would imply the invalidity of a

conviction does not accrue until the conviction is reversed or expunged, and therefore

the statute of limitations does not begin to run until such an event occurs, if ever.) (cleaned up);

*Johnson v. Winstead*, 900 F.3d 428, 436 (7th Cir. 2018) ("The *Heck* bar is normally raised

defensively to win dismissal of a § 1983 claim when the plaintiff's conviction has not been

overturned; if the bar applies, the plaintiff's claim must be dismissed as premature. In contrast,

*Heck*'s rule of deferred accrual is raised offensively to overcome a statute-of-limitations

defense.").  *Heck* therefore vitiates an otherwise meritorious limitations defense.

The Court must therefore determine whether *Heck* applies.  If it does not, the accrual of

Murray's excessive force claim was immediate rather than deferred.  In that circumstance, his

claim must be dismissed with prejudice as time-barred.  But if *Heck* does apply, his excessive

force claim has not yet accrued, and hence it must be dismissed without prejudice as premature.

14

*Wheeler v. Dayton Police Dep't*, 807 F. 3d 764, 767 (6th Cir. 2015) ("When courts dismiss claims under *Heck*, they typically do so without prejudice."); *Sampson v. Garrett*, 917 F. 3d 880, 882 (6th Cir. 2019).

Returning to the substantive question posed by *Heck*, the Sixth Circuit has long held that an excessive force claim may conflict with a criminal conviction if state law either makes the absence of excessive force an element of the criminal offense to be proved by the prosecution, or if it makes the presence of excessive force an affirmative defense to be proved by the defendant. *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (*citing Schreiber v. Moe*, 596 F. 3d 323, 334 (6th Cir. 2010) and *Cummings v. City of Akron*, 418 F. 3d 676, 684 (6th Cir. 2005)).

Kentucky law permits a person to use force if reasonably necessary and in self-defense under delineated circumstances. Ky. Rev. Stat. 503.050. But it also provides that the use of force is not justifiable when "[t]he defendant is resisting an arrest by a peace officer, recognized to be acting under color of official authority and using no more force than reasonably necessary to effect the arrest, although the arrest is unlawful ..." Ky. Rev. Stat. 503.060(1). Therefore "if the police are using more force than is reasonably necessary to effect the arrest then a suspect who resists arrest can validly claim he acted in self-defense. In that scenario the suspect has a perfect defense." *Baze v. Parker*, 371 F.3d 310, 327 (6th Cir. 2004) (cleaned up). The officers contend that straightforward application of this precedent bars Murray's claim from proceeding.

But this reasoning is too facile, and the Sixth Circuit has long rejected it. Why? Because:

> ... the analysis does not end here. For *Heck* to bar a § 1983 claim, success on the claim must necessarily imply the invalidity of the conviction. Accordingly, both the § 1983 claim and the conviction must arise out of the same events. *See Cummings*, 418 F.3d at 682-83 (finding that the "struggle between [the plaintiff] and the officers gave rise to both [the plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined.") On the other

15

hand, an excessive force claim is not barred when the alleged use of force occurred after the suspect was handcuffed and brought under control. *See Coble v. City of White House*, 2009 WL 2850764, at *8-9 (M.D. Tenn. Aug. 29, 2009), *rev'd on other grounds*, 634 F.3d 865 (6th Cir. 2011). In such a case, the force would not be "inextricably intertwined" with the suspect's resistance to arrest.

*Parvin*, 641 F. App'x at 450. *See also Phillips v. Curtis*, 765 F. App'x 130, 131-32 (6th Cir. 2019) ("... a person convicted of resisting arrest may still allege that an officer used excessive force after the arrest occurred. In that situation, the civil suit and the conviction potentially deal with separate moments and potentially can coexist without contradicting one another."); *Swiecicki v. Delgado*, 463 F. 3d 489, 504 (6th Cir. 2006) (Sutton, J., concurring in part, concurring in the judgment, and dissenting in part) ("As a matter of sheer logic, one may bring a successful excessive-force claim without having to establish that the resisting-arrest charge was unlawful: An officer could legitimately arrest a suspect but use excessive force in bringing the suspect to the station.").

This is, in essence, what Murray argues: that his resistance to his arrest was a distinct event that concluded before the excessive use of force commenced. *See* [R. 34 at 7-9] The matter is complicated by the fact that Murray has no memory of either his arrest or the use of force that followed. His complaint therefore makes no clear allegations about *when* the allegedly excessive force was applied relative to his arrest. Instead, in his response he points to hospital records which indicate that many more blows were inflicted than the few referred to in the arrest citation. He also notes that he had no injuries to his hands but severe injuries to his face, which (he suggests) indicates that he was repeatedly punched after his hands were secured behind him. *Id*.

Perhaps this is so; perhaps not. But the procedural posture through which the issue is to be tested informs its resolution. On a motion to dismiss pursuant to Rule 12(b)(6), the focus is

16

on the sufficiency of the allegations contained in the plaintiff's complaint.  *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014).  Where the initial pleading does not clearly indicate whether the arrest and the force used were a single event (and hence "inextricably intertwined") or were instead two distinct events, *Heck*'s possible application should be deferred for resolution later in the case, perhaps through a motion for summary judgment following discovery.  *See Phillips*, 765 F. App'x at 132 ("...the district court applied *Heck* prematurely in granting the defendants' motion to dismiss.  Limited discovery should flesh out the nature of Phillips's plea and the timing of her conduct and the shooting."); *Thomas v. Walker*, No. 6:19-CV-226-REW, 2020 WL 2319695, at *8 (E.D. Ky. May 11, 2020) (permitting amendment of the complaint over objection on grounds of futility, which asserts the amended complaint could not withstand a motion to dismiss, because "the proposed second amended complaint is not futile insofar as *Heck* does not necessarily defeat the excessive-force claim.  Plaintiffs have plausibly alleged an unconstitutional use of force that occurred after Mr. Thomas's act of resistance and any use of force reasonably necessary to subdue him."); *Hanley v. Brumback*, No. CV 6:19-254-KKC, 2020 WL 6302266, at *5 (E.D. Ky. Oct. 26, 2020) ("At this juncture [on a motion to dismiss], the Court is not entirely clear as to how the sequence of events in the night in question unfolded.  It is clear, however, that Plaintiffs have plausibly alleged that an unconstitutional use of force occurred prior to them taking action on their end, and prior to them being subdued ...").  *Heck* therefore does not warrant dismissal of Murray's Section 1983 claim at this stage of the case.

## III

Murray's pendent state law claims are clearly barred by the statute of limitations.  The only question remaining is whether Murray's excessive force claim under § 1983 must be

17

dismissed with prejudice as time-barred or without prejudice pursuant to *Heck*.  The Court will refer this matter to a Magistrate Judge to help the parties flesh out the facts necessary to make that determination should Murray wish to proceed further.

        Accordingly, it is **ORDERED** as follows:

        1.      The motions to dismiss filed by Donnie Jones and Les Moses [R. 30] and Jeremy Elliotte [R. 32] are **GRANTED IN PART** and **DENIED IN PART**;

        2.      Plaintiff Glen Murray's state law claims for negligence and gross negligence (Count 2), battery (Count 3), and negligence *per se* (Count 4) are **DISMISSED** with prejudice;

        3.      This matter is **REFERRED** to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) to conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions;

        4.      The Clerk of the Court shall **ASSIGN** this matter to a Magistrate Judge.

        This 16th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge

18