**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

| | |
|---|---|
| **GLENN MURRAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) NO. 6:20-CV-00082-MAS |
| | ) |
| **DONNIE JONES,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION & ORDER

As the Court observed early in this case, "whichever way [the] cookie eventually crumbles, it does crumble, and this case must be dismissed." [DE 37, PageID# 162]. The question has never been whether Plaintiff Glenn Murray's excessive force claim under 42 U.S.C § 1983 could proceed, but why it could not: either the claim is untimely under the applicable Kentucky statute of limitations or, for now, it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

After a stay of discovery prompted by Defendant Jeremy Elliotte's federal indictment, the parties returned with fully briefed motions for summary judgment. [DE 69, 76, 77]. After careful review, the Court concludes that because the Defendants' alleged use of force cannot be temporally separated from conduct underpinning Murray's Kentucky resisting arrest conviction, Murray's § 1983 claim has not yet accrued. Thus, under *Heck*, it must be dismissed. The Court shall grant

Defendants' motions for summary judgment and dismiss Murray's excessive force claim without prejudice pursuant to *Heck*.

## I. FACTUAL BACKGROUND

On the evening of November 5, 2018, Plaintiff Glenn Murray ("Murray") claims he was walking alone along a set of railroad tracks in Whitley County, Kentucky. Earlier that day, Murray had been in a car with a woman he described as a casual acquaintance. They had driven to a dead-end of a holler—an informal gathering spot where people, as Murray put it, would "hang out" and "hook up." [DE 69-3, PageID# 424–25]. After an argument with his female companion, he got out of the vehicle and began walking to "blow off some steam." [DE 69-3, PageID# 422–23]. He testified that railroad tracks were situated just at the edge of the holler, so he followed them on foot, intending to walk home. [DE 69-3, PageID# 424].

Around the same time, Trooper Donnie Jones ("Trooper Jones"), though off duty, was en route to the gym when his wife called and reported seeing two individuals walking near their neighbor's abandoned barn. Trooper Jones decided to investigate and drove toward the location in his marked cruiser. [DE 69-1, PageID# 302–03].

According to Murray, Trooper Jones approached him on foot while he was walking along the tracks. Trooper Jones began asking questions to determine who Murray was and why he was in the area. Murray admitted that he "got smart" with Trooper Jones and that he responded by placing Murray in handcuffs. [DE 69-3, PageID# 428–29]. Fearing that he was about to be taken to jail, Murray fled on foot while handcuffed. [DE 69-3, PageID# 429]. He recalled running for several minutes

before being cut off by Trooper Jones. [DE 69-3, PageID# 438–39]. Murray testified that, after a brief exchange, Jones slammed him to the ground and began striking him with his fists. He described the blows as "thumping" and stated that he was soon rendered unconscious. [DE 69-3, PageID# 440, 443]. Murray does not remember what happenedf next. His next memory is waking up in a hospital three weeks later. [DE 69-3, PageID# 364; DE 80-1, PageID# 609].

The troopers' account differs in several ways. Trooper Jones testified that, while responding to his wife's report of suspicious activity near their neighbor's barn, he saw a male and female emerging from a nearby field. He and pulled up alongside them in his cruiser to ask what they had been doing near the barn. While still inside the vehicle, he attempted to gather identifying information so he could issue a warning for trespassing. The male, later identified as Murray, began reciting a Social Security number and then fled. [DE 69-2, PageID# 350–52]. Trooper Jones testified that he initially gave chase on foot and recovered a backpack Murray had dropped. Inside, he found identification that allowed him to confirm Murray's identity and that he had four outstanding warrants. [DE 69-2, PageID# 352–53]. Jones returned to his cruiser, notified dispatch, and resumed his pursuit by vehicle. [DE 69-2, PageID# 353, 356–57].

Trooper Jones testified that he pulled over in the area where he believed Murray might be and continued the pursuit on foot until he came upon railroad tracks. Several minutes later, he observed Murphy walking toward him along the tracks, appearing intoxicated and stumbling. Jones testified that he intercepted

Murray to prevent him from falling down an embankment and into a river, and that the two went to the ground. He testified that Murray resisted by kicking, swinging, and throwing rocks. To subdue him, Jones delivered an unspecified number of closed-fist strikes. [DE 69-2, PageID# 360, 364]. According to him, the struggle continued until Trooper Jeremy Elliotte ("Trooper Elliotte") and Sergeant Les Moses ("Sergeant Moses") arrived on foot. They assisted in securing Murray in handcuffs behind his back. [DE 69-2, PageID# 365].

Sergeant Moses testified that he was on his way home when he heard the dispatch concerning a fleeing suspect. He responded by vehicle and proceeded on foot toward the location using directions provided by Trooper Jones via phone, eventually joining Trooper Elliotte, who had also responded to the call. [DE 74, PageID# 513, 516]. Upon arrival, Moses observed Jones and Murray already on the ground. He testified that Trooper Jones was not striking Murray at that point. Sergeant Moses and Trooper Elliotte then helped to finish handcuffing Murray. [DE 74, PageID# 517].

Emergency medical services ("EMS") were dispatched to the scene. According to their report, EMS personnel were directed by law enforcement officers to a male subject lying in a field, later identified as Murray. They reported finding Murray in the fetal position, unresponsive to verbal commands and responsive only to painful stimuli. [DE 80-5, PageID# 688]. He was not wearing a shirt, and his pants were pulled down just below his buttocks. EMS documented that Murray appeared cold, pale, and dry, and moaned in response to stimulation. [DE 80-5, PageID# 688]. They

observed multiple signs of trauma, including a 2–3 inch laceration to the back of Murray's scalp, bleeding from the nose and lips, and swelling and bruising around both eyes. When EMS attempted to roll Murray supine, he became combative; they ultimately secured him on a stretcher and completed further assessment inside the ambulance. Additional trauma was noted to both arms and lumbar spine, [DE 80-5, PageID# 688–89].

Due to the extent of the injuries, EMS requested air medical transport. Murray was ultimately transferred to a flight crew for medevac transport to a trauma facility.[1] [DE 80-5, PageID# 689–90]. EMS noted that when they asked officers on scene what had happened, they were told Murray had "fallen on the railroad tracks." EMS also documented that there were no railroad tracks in sight at the location where Murray was found. [DE 80-5, PageID# 688].

Three months later, on February 18, 2019, a Whitley County grand jury indicted Murray on three charges arising from the incident: resisting arrest, fleeing or evading police in the first degree (on foot), and assault in the third degree (of a police officer). [DE 69-4, PageID# 362–63]. At the time, Murray was in custody in Indiana on unrelated drug charges and was not returned to Kentucky until 2020.

---

[1] Murray was airlifted to the University of Tennessee Medical Center, where he remained hospitalized from November 5 to November 26, 2018. [DE 80, PageID# 574]. Diagnostic imaging revealed extensive injuries, including multiple skull, facial, vertebral, and rib fractures; bilateral pneumothoraces; a liver laceration; and fractures to the scapula, acromion, and right ulna. [DE 80, PageID# 574]. Murray's expert, Dr. Jeffrey Springer, concluded that the variety of injuries was not consistent with a fall onto railroad tracks or closed-fist strikes alone, and were more typical of high-energy blunt force trauma. [DE 80, PageID# 574].

[DE 34, PageID# 119–20]. On November 19, 2020, he pled guilty to resisting arrest and fleeing. The assault charge was dismissed under the terms of the plea agreement. Murray was sentenced to a term of conditional discharge and did not serve additional time on the Kentucky charges. [DE 69-4, PageID# 362–63].

## II.    PROCEDURAL HISTORY

Murray initially filed a *pro se* complaint on April 7, 2020, alleging that Trooper Jones, Trooper Elliotte, and Sergeant Moses used excessive force during his November 5, 2018 arrest. [DE 1]. After retaining counsel, Murray filed an Amended Complaint on February 8, 2021, asserting a claim under 42 U.S.C. § 1983 for excessive force, as well as state law claims for negligence, gross negligence, battery, and negligence per se. [DE 18, PageID# 71–72].

Early on, the defendants moved to dismiss Murray's claims. [DE 30 & 32]. They argued that the § 1983 claim was untimely under Kentucky's one-year statute of limitations and that the state law claims failed as a matter of law. On March 17, 2022, the Court granted the motion in part, dismissing all state law claims with prejudice. [DE 37, PageID# 228]. As to the federal excessive force claim, the Court found that the statute of limitations appeared to have expired. However, because Murray had pled guilty to resisting arrest and the excessive force claim arose from the same incident, the Court recognized that *Heck* might apply and bar the claim until Murray's conviction was invalidated. The Court concluded that it lacked sufficient facts to determine whether *Heck* applied and declined to dismiss the claim at that time.

Following the Court's ruling, the parties began discovery and filed consent to magistrate judge jurisdiction under 28 U.S.C. § 636(c), resulting in the reassignment of the case to the undersigned. Progress was delayed in August 2022, when Trooper Elliotte was indicted in this district on unrelated federal charges. [DE 80, PageID# 577]. The Court granted a stay of discovery as to Trooper Elliotte and relieved him of any obligation to respond to written discovery or sit for a deposition while the criminal case remained pending. [DE 58].

Discovery otherwise proceeded. Trooper Jones and Sergeant Moses sat for depositions, and Murray was deposed on August 16, 2024 [DE 80-1]. Expert disclosures were exchanged. After the close of fact discovery, Defendants timely filed motions for summary judgment, all of which are fully briefed and ripe for a ruling.

### III. APPLICABILITY OF *HECK V. HUMPHRY*

Although this matter is before the Court on multiple motions for summary judgment, the Court must first resolve whether *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Murray's excessive force claim as a matter of law. Under *Heck*, a plaintiff may not bring a § 1983 claim for damages that, if successful, "would necessarily imply the invalidity" of a criminal conviction or sentence, unless that conviction has been invalidated by direct appeal, executive clemency, habeas corpus, or another authorized means. *Id.* at 486–87. The Supreme Court has emphasized that such a claim "has not yet arisen" and is not cognizable under § 1983. *Id.* at 489. Thus, the *Heck* rule functions as a substantive bar to accrual—not merely as a defense—and mandates dismissal without prejudice. *See Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999) (per curiam).

In the excessive force context, the Sixth Circuit has recognized that an excessive force claim is barred under *Heck* only in two narrow circumstances: where (1) the criminal offense includes the absence of excessive force as an element, or (2) excessive force would have served as an affirmative defense in the criminal case but was not raised. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).

Here, Murray pled guilty to violating KRS § 520.090, Kentucky's resisting arrest statute, which prohibits forcibly preventing a peace officer "from effecting an arrest" by using or threatening physical force or by "using any other means creating a substantial risk of causing physical injury." KRS § 520.090(1)(b). As the Court explained when denying Defendants' motions to dismiss, the statute does not include the absence of excessive force as an element, and it explicitly forecloses any defense based on the alleged unlawfulness of the arrest itself, so long as the officer was acting in apparent good faith. [DE 37, PageID# 174–75]; *see also* KRS § 503.060(1). Thus, the first *Schreiber* prong does not apply.

The second *Schreiber* prong, however, warrants closer scrutiny. Under Kentucky law, an individual may claim self-defense to a charge of resisting arrest if the officer used "unlawful physical force," meaning more force than was reasonably necessary to effect the arrest. KRS § 503.060(1); *Baze v. Parker*, 371 F.3d 310, 327 (6th Cir. 2004). As the Court previously recognized, if Murray's account were credited, the alleged use of excessive force could have served as a complete defense to his conviction. [DE 37, PageID# 175].

Because Murray pled guilty, he forewent that opportunity. And as the Sixth Circuit has emphasized, where a plaintiff could have raised excessive force as an affirmative defense to a resisting arrest charge but did not, a subsequent § 1983 claim asserting that the force used was excessive would necessarily imply the invalidity of the conviction and is barred by *Heck*. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 616 (6th Cir. 2014); *Cummings*, 418 F.3d at 683–84. Accordingly, Murray's conviction for resisting arrest bars accrual of his excessive force claim to the extent the challenged force was applied during the course of the resistance that formed the basis for that conviction.

However, Murray contends that the force at issue was applied only after his resistance had ended. If true, Murray's version of events would remove *Heck* from the equation entirely. Whether the alleged force occurred after Murray was subdued presents a factual question that the Court addresses below.

### IV.   SUMMARY JUDGMENT ANALYSIS

#### A.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh the evidence

and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

**B.     EXCESSIVE FORCE CLAIM MUST BE DISMISSED UNDER RULE 56(A)**

Although *Heck* bars § 1983 excessive force claims that would necessarily imply the invalidity of a resisting arrest conviction, not all such claims "necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable." *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006), *abrogated on*

*other grounds by Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (citing *Hodge v. City of Elyria*, 126 F. App'x 222, 225 (6th Cir. 2005)). This "temporal distinction" between a lawful arrest and "the subsequent, independent use of allegedly excessive force" has been consistently recognized by the Sixth Circuit as permitting a plaintiff to pursue an otherwise barred excessive force claim. *Michaels v. City of Vermillion*, 539 F. Supp. 2d 975, 992–93 (N.D. Ohio 2008) (citing *Sigley v. Kuhn*, 205 F.3d 1341 (6th Cir. 2000) (table)); *see also Schreiber*, 596 F.3d at 335 (noting that force used after the arrestee was "neutralized" and under control may give rise to a claim that does not necessarily imply the invalidity of the conviction); *Hayward*, 759 F.3d at 616 (*Heck* bars a § 1983 claim only when success on the claim would negate an element of the offense or establish an affirmative defense that was available but not raised); *Chaney-Snell v. Young*, 98 F.4th 699, 705 (6th Cir. 2024) (same).

Whether the force alleged by Murray occurred "prior to or in conjunction with" the episode of resistance giving rise to Murray's resisting arrest conviction is a question of fact. *See Michaels*, 539 F. Supp. 2d at 993 (citing *Swiecicki*, 463 F.3d at 494). Here, the material facts are the timing of Murray's resistance—the conduct to which he pled guilty—and the timing of troopers' use of force. "In other words, if, on the facts as alleged by [Murray], a jury could find that two distinguishable events occurred here—*i.e.,* (1) resistance to a lawful arrest and (2) the use of excessive force after the arrest had already been accomplished—then *Heck* does not bar the [Murray's] § 1983 claim[]." *Michaels*, 539 F. Supp. 2d at 993–94.

To determine whether *Heck* applies, the relevant inquiry turns on two material facts: (1) when Murray was subdued or his resistance ceased, and (2) when the alleged excessive force was applied. Murray lacks a clear memory of most of the encounter, having testified that he lost consciousness during the struggle with Trooper Jones. Although he recalled being handcuffed when Trooper Jones allegedly grabbed him and slammed him to the ground, that detail does not create a genuine dispute as to when his resistance ended. In fact, Murray acknowledged in his deposition that he fled after initially being handcuffed and ran on foot for several minutes. Trooper Jones testified that, after catching up to Murray, a physical struggle ensued and continued until Sergeant Moses and Trooper Elliotte arrived to assist in subduing and handcuffing him. According to Sergeant Moses, he did not witness Trooper Jones striking Murray upon arrival, but he confirmed that he and Trooper Elliotte helped complete the handcuffing process.

A plaintiff's inability to recall the events surrounding an alleged use of force does not, standing alone, foreclose an excessive force claim. *See Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019) (finding district court did not err in denying summary judgment in favor of officers when plaintiff had no personal knowledge to support his excessive force claim but offered his father's testimony); *Jefferson v. Lewis*, 594 F.3d 454, 462–63 (6th Cir. 2010) (considering testimony to be sufficient to support inference that discredited officer's account); *Mallin v. City of Eastlake*, 755 F. Supp. 2d 819, 845 (N.D. Ohio 2010) (considering circumstantial evidence when plaintiff could not recall events following his arrest when he was awoken from a "dead sleep").

Murray invokes this principle here to show that the alleged force occurred after he was restrained by relying upon circumstantial evidence: the EMT report, which he contends is inconsistent with the troopers' narrative regarding the severity of his injuries and where those injuries occurred; hospital records documenting the severity of his injuries; and his expert's opinion that the nature and extent of the injuries are not consistent with the level of force Trooper Jones claims to have used.[2]

While these facts may be relevant to the merits of Murray's excessive force claim (particularly, whether the force used was gratuitous), they do not address the dispositive issue under *Heck*: *when* the alleged excessive force occurred relative to his resistance ceasing. Neither the medical records nor the expert opinion draw any conclusions about whether Murray sustained his injuries during the act of resistance forming the basis of his conviction, or only afterward. On this record, no reasonable juror could temporally separate the episode of resisting arrest from the allegations of excessive force. Absent a genuine dispute on timing of the alleged excessive force, the Court finds that Defendants prevail on summary judgment as to this element of

---

[2] The opinion of Murray's forensic pathology consultant expert, Dr. Jeffrey Springer, is a single paragraph:

> The injuries noted in the medical records would have resulted from very significant trauma, such as a motor vehicle collision, train collision, pedestrian versus moving object, descent from height, or assault. These injuries could not entirely be explained by "closed fist hand strikes" or "fall on railroad tracks". They are also in excess of what I have seen in other assault cases as well as law enforcement encounters. Please note there are inconsistencies with the dates, times, and locations of said assault, and my opinion is based on the records available to me.

[DE 80-6, PageID# 697].

Murray's excessive force claim. Thus, Murray's excessive force claim is barred under *Heck*.

C.     **DISMISSAL WITHOUT PREJUDICE IS APPROPRIATE**

Defendants have advocated for a bar under *Heck* from the outset of this litigation. At this juncture, they ask the Court to enter summary judgment in their favor and dismiss Murray's claim *with* prejudice. They argue that even if *Heck* applies, Murray has now had a full opportunity to conduct discovery and develop his case and has failed to present sufficient evidence to create a genuine issue of material fact on the merits. In his response, Murray argues that *Heck* applies and that the Court should not reach the merits at all. He asks the Court to dismiss the claim without prejudice, preserving his ability to refile should his conviction ever be invalidated. [DE 80, PageID# 580]. He emphasizes that the severity of his injuries strongly suggests the use of gratuitous force during his arrest. [DE 80, PageID# 574].

The Court does not discount the parties' efforts or the substantial resources devoted to litigating this matter. Nonetheless, because *Heck* applies, the excessive force claim is not yet legally cognizable. As such, the Court lacks authority to address the merits; doing so would not only be advisory but could also prove prejudicial. Dismissal without prejudice is also consistent with controlling Sixth Circuit precedent. In *Callihan*, the court held that, "because [plaintiff's] claim under § 1983 would, if successful, necessarily imply the invalidity of a conviction . . . *Heck* precludes the claim. Accordingly, dismissal of the claim is required. However, that dismissal should be *without prejudice*." 178 F.3d at 804 (emphasis added); *see also Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 767 (6th Cir. 2015) ("When courts dismiss claims

under *Heck*, they typically do so without prejudice . . . and dismissals without prejudice generally are not judgments on the merits for claim-preclusion purposes[.]").

Even where defendants raise alternative grounds for dismissal, courts routinely decline to reach them when *Heck* squarely bars the claim. *See, e.g.*, *Hayward*, 759 F.3d at 613 (declining to reach statute of limitations where *Heck* applied); *McDonough v. Smith*, 139 S. Ct. 2149, 2158–59 & n.9 (2019) (noting that *Heck* prevents claim accrual and declining to reach timeliness arguments); *Michaels*, 539 F. Supp. 2d at 994 (declining to address officer's qualified immunity arguments because the excessive force claim was barred by *Heck*).

To be sure, *Heck* may practically operate here as a permanent bar. If Murray's conviction is never overturned or invalidated, the excessive force claim will remain forever unaccrued. But that is the express consequence of the rule set forth in *Heck*, which rests on the principle that civil courts may not render damages judgments that contradict still-valid criminal convictions. Because Murray's claim has not accrued, the Court cannot assess its sufficiency or grant judgment on the merits. Murray's excessive force claim must be dismissed without prejudice.

## V. <u>CONCLUSION</u>

In sum, the Court finds no genuine dispute of material fact regarding the timing of the force used during Murray's encounter with the Defendants on November 5, 2018. While Murray attempts to frame the use of force as occurring after he had been subdued and his resistance had ended, the record does not support a triable issue on that point. Absent a genuine dispute on this point, the force used at the time

of Murray's arrest cannot be temporally separated from the conduct underlying his conviction for resisting arrest.

Because the alleged excessive force cannot be divorced from conduct underpinning his resisting arrest conviction, *Heck v. Humphrey* bars the claim unless and until that conviction is invalidated. The cookie, then, crumbles under *Heck* and Murray's excessive force claim must be dismissed without prejudice. Having fully considered the matter, and the Court being otherwise sufficiently advised,

1. The motions for summary judgment filed by Defendants Donnie Jones [DE 69], Jeremy Elliotte [DE 76], and Les Moses [DE 77] are **GRANTED**; and

2. Plaintiff Glenn Murray's sole remaining claim under 42 U.S.C. § 1983 for excessive force is **DISMISSED WITHOUT PREJUDICE** pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).

A separate Judgment shall issue.

Signed this the 27th of May, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY